ROCKLAND, MT. DESERT AND SULLIVAN, STEAMBOAT COMPANY

*vs.*

WILLIAM H. FESSENDEN.

Knox.    Opinion February 24, 1887.

*Contracts.    Measurements at sea.    "Mile."*

Where a person contracts with a company for a certain consideration to build and equip for them, to ply between ports on the coast of Maine, a steamboat which shall be able to attain a speed of fifteen miles an hour, with forty pounds of steam, without forcing the pumps, and to make a trial trip "at sea" at the time of delivery, the measurement is to be in marine or sea miles, and not land or statute miles.

ON exceptions and motion to set aside the verdict.

An action for damages for failure of the defendant to perform the following contract:

"This agreement, made this thirteenth day of December, A. D. 1878, between William H. Fessenden of Portland, in the county of Cumberland and state of Maine, of the first part, and Thomas S. Lindsey and John Lovejoy of Rockland, Maine, Horace W. Jordan of Boston, in the commonwealth of Massachusetts, Henry W. Swanton and Edwin Reed of Bath, Maine, the committee appointed December 9, 1878, by the Rockland, Mt. Desert and Sullivan Steamboat Company, an organization formed by articles of agreement dated November 7, 1878, of the second part, witnesseth.

"That the party of the first part, for the consideration hereinafter mentioned, agrees to build for the party of the second part, a side wheel steamboat, with boiler and machinery, according to

the specifications submitted to him by the party of the second part, except so far as alterations therein may be agreed upon in writing, to guarantee to said boat a speed of fifteen miles per hour, with forty pounds of steam, and without forcing the fires, to procure the proper certificate from the United States Inspectors, to make a trial trip at sea and to deliver said boat to said party of the second part, on the twentieth day of May, 1879.

"And in consideration of the foregoing, the party of the second part agrees to pay all inspection and Custom House fees, to furnish the equipment required by the laws of the United States, to pay the pilot on the trial trip, and to pay the party of the first part the sum of thirty-four thousand seven hundred dollars as follows :

"The sum of four thousand dollars in one month, the sum of six thousand dollars in two months, the sum of six thousand dollars in three months, the sum of eight thousand dollars in four months, and the sum of ten thousand seven hundred dollars on the delivery of said boat as aforesaid, and the acceptance of the same by the party of the second part.

"It is understood that the party of the first part shall pay to the party of the second part the sum of fifty dollars per day for each and every day that the delivery of said boat may be delayed beyond the time herein agreed upon, unless said delay should arise from causes not within the control of said party of the first part." Duly executed.

The verdict was for the plaintiffs for eight thousand three hundred and thirty-one dollars and thirty cents.

*A. P. Gould*, for the plaintffs, cited : 24 Rees' Cyclopedia, " Mile"; Webster's Dict. "Mile"; Worcester's Dict. "Mile "; 11 Appleton's Cyclopedia, " Mile"; 16 Encyclopedia Brit. (Ed. 1858) Tit. "Navigation"; 14 Encyclopedia Brit. (Ed. 1858) Tit. "Log"; *People's Ferry Co.* v. *Beers*, 20 Howard, 393.

Evidence of usage was admissible. *Lethulier's case*, 2 Salk. 443 ; *Vallance* v. *Dewar*, 1 Camp. 503 ; *Robertson* v. *Jackson*, 2 C. B. 412 (52 E. C. L. 411) ; *Pelly* v. *Royal Exch. Ass.* 1 Burr, 341 ; 2 Whart. Ev. § 963 ; 1 Greenl. Ev. § 289 ; *Morse* v. *Weymouth*, 28 Vt. 824.

*Nathan Webb, James D. Fessenden and Nathan and Henry B. Cleaves,* for defendant.

No word is better and more distinctly defined than this word, mile. There is no ambiguity about it. It is of common and familiar use, and to the great majority of men is not known to ever be applied, even with qualifying adjectives, to the designation of but one fixed and definite measure of length or distance. *Nash* v. *Drisco,* 51 Maine, 417.

There was, therefore, no difficulty in respect to the significance of that term in this contract, requiring the aid of intrinsic evidence to interpret it. *Quoties in verbis nulla est ambiguitas, ibi nulla expositio contra verba fienda est.*

The language of the contract being free from ambiguity, evidence of usage was not admissible to show that it meant anything different from its plain and natural import. *Ripley* v. *Crooker,* 47 Maine, 376; *Metcalf & als.* v. *Weld & als.* 14 Gray, 212.

"Where the meaning of terms is plain and unequivocal and *a fortiori,* where the law has annexed a particular meaning to the use of the term, it seems to be a universal rule that no evidence can be admitted of a custom or usage to receive such terms in a different sense." 2 Starkie's Ev. p. 455.

"So where words have a known legal meaning which belongs to them." 3 Starkie, 1038.

"But where the words have a known legal meaning, such for instance as measures of quantity fixed by statute, parol evidence that the parties intended to use them in a sense different from the legal meaning, though it were still the customary and popular sense, is not admissible." 1 Greenl. Ev. § 280; Taylor on Ev. § 1062.

"Where words have acquired a known legal meaning, it can not be shown that they were used in a different sense." *Boorman* v. *Jenkins,* 12 Wend. 574; *Att'y General* v. *Plate Glass Co.* 1 Anstruther, 39.

That the word mile has in the United States acquired a known legal meaning, is clear from the legislation of the Congress of the United States, and of the Legislature of Maine.

Revised Statutes of United States, § 74, "not exceeding ten cents a mile," etc., allowed for travel to serve precepts of either house of Congress; § 1273, "ten cents a mile, and no more, for each mile actually traveled," allowance to army officers; § 1566, "an allowance of ten cents a mile may be made to officers in the Naval service . . for traveling expenses when under orders."

There is not one kind of miles for army officers and civilians and another kind for naval officers. § 5126, "five cents a mile each way," fees of messenger in bankruptcy; § 829, marshal's fees, "ten cents a mile for himself and each prisoner," to attend court, "ten cents for going only," for serving process, "six cents per mile"; § 828, clerk's fees, travel to court, "five cents a mile for going and five cents for returning."

Revised Statutes of Maine, c. 116, § 11, travel of jurors, "six cents a mile for their travel out and home"; § 13, witnesses, "six cents per each mile's travel going and returning"; § 14, parties and attorneys, "the same (33 cents) for every ten miles' travel".; p. 815, sheriff's travel, "four cents a mile," "more than fifty miles only one cent a mile"; p. 814, appraisers of real estate, "four cents a mile," etc., etc. "Bushels, without any other explanation, means a bushel by statute measure." *Hockin* v. *Cooke*, 4 Term. Rep. 314; *Noble* v. *Durrell*, 3 Term. Rep. 271; *Master of St. Cross* v. *Lord Howard De Walden*, 6 Term. Rep. 338.

"The English statute mile was defined (incidentally it would seem) by an act passed in thirty-fifth year of the reign of Queen Elizabeth, by which persons were forbidden to build within three miles of London, and the miles were declared to be eight furlongs, of forty perches, of sixteen and one-half feet each. The statute mile is therefore 1760 yards, or 5280 feet." Brande Encyclopedia of Science and Art, Title "mile"; Statute 35 Elizabeth, c. 6; Bouvier's Law Dict. "mile"; also Jacob's Law Dict.

Revised Statutes of United States, § 3570, giving table of Equivalent Measures in Metric system; § 4233, prescribing rules to be observed by all vessels of the navy and mercantile marine of the United States for prevention of collisions at sea.

Rule two, A, requires a light to be visible, "at a distance of at least five miles." "Where a written contract is susceptible on its face of a construction that is reasonable, resort can not be had to evidence of custom or usage to explain its language." *Insurance Cos.* v. *Wright*, 1 Wall. 470; *Kemble* v. *Lull*, 3 McLean, 274; *Cross* v. *Eglin*, 2 Barn. & Adol. 106 (22 E. C. L. 36).

In *Brown* v. *Brown & al.* 8 Met. 576, SHAW, C. J., "We think the general rule of law is, that the construction of every written instrument is a matter of law, and, as a necessary consequence, that courts must in the first instance, judge of the meaning, force and effect of language." *The Reeside*, 2 Sumner, 569.

This contract for building a vessel was not a maritime contract, and the claim that its terms should receive a construction suitable to a maritime contract can not be sustained. *People's Ferry Co.* v. *Beers*, 20 Howard, 402; *Cunningham* v. *Hall*, 1 Clifford, 45; *The Coernine*, 7 Am. Law. Reg. 5; *Calkin* v. *United States*, 3 Nott. & Hunt. 297; *Young* v. *Ship Orpheus*, 2 Clifford, 35.

In *Roach & al.* v. *Chapman & al.* 22 Howard, 132, Mr. Justice GRIER, delivering the opinion of the court, says: "A contract for building a ship, or supplying engines, timber or other material for her construction, is clearly not a maritime contract."

To make evidence of custom admissible, to control the ordinary and well known sense of the terms of a contract, that usage must be so notorious that not only those engaged in the business to which the custom pertains, but also all who deal with them, must be understood and taken to have known it and had reference to it, upon contracting. *Rogers* v. *Mechanics Ins. Co.* 1 Story, 607; *Macy & al.* v. *Whaling Ins. Co.* 9 Met. 363.

PETERS, C. J. The defendant contracted in writing to build for the plaintiffs a steamboat (for the consideration of $37,000) which would attain a speed of fifteen miles per hour, with forty

pounds of steam, without forcing the fires, and to make a trial trip of the boat "at sea" at the time of delivery.

The main question of the case is whether the speed should be reckoned upon a measurement of land or of sea miles. The plaintiffs contend that miles as measured on the sea — sea miles — knots — marine or geographical miles, and the defendant contends that land miles only — were intended. A very important question is thus presented, which, after much research, we do not find, either as a question of law, or of fact founded on usage, ever before came before any court in the world. Not a direct authority has been cited on either of the remarkably able briefs of counsel, and we confidently believe not one can be found. We have ourselves suffered some unsteadiness of opinion in our attempt to solve the question; but, after long consideration, we are led to the belief that the most satisfactory end of the case will be to allow the plaintiffs' contention to prevail.

Not, however, to prevail, as the judge allowed the jury to place it, on the ground of usage, but on a construction of law. If the law will not support the plaintiffs' position — usage cannot. There can be no usage covering the point in controversy, unless it be such a one as the law recognizes as a part of itself. The law, we know, appropriates many usages and customs as a foundation for itself to stand upon. The evidence of the experts does not have any real force to overturn the legal rule, whatever it may be. Not a witness ever knew a case or a contract where any such question arose. The witnesses inform us of the nature of sea miles and of the manner of measuring them. If we adopt their meaning of the word when occurring in contracts, why should we not engraft the same meaning upon the word when it appears in legislative enactments, federal and state, concerning distances on the sea? The word must have the same meaning, in the same connection, whether spoken by a captain or pilot, or by a legislator. Its application should be universal. The explanations of the experts are interesting, however, and are helpful to the court in matters of common, every day

knowledge, such as a court may acquire for itself from reading books or making personal inquiry.

Each side is contending for a measure that is no more nor less than a mile. One contends for a mile which measures 5280 feet on the land — the other for a mile that measures 6086.7. on the sea. The land mile is more common to those whose business is upon the land — to landmen — while the sea mile is the only one recognized by those who navigate the sea — by seamen. The first named was legalized in the reign of Queen Elizabeth, known as "statute mile" — or "English mile" — or "English statute mile;" and the "log" was invented at about the same time which inaugurated the measuring of sea or marine miles, known as "English geographical miles." Each is adapted to its own sphere.

It would be impossible to measure the sea as we do the land. Charts of the ocean and other navigable waters are made on a scale of sixty geographical miles — sea miles — to a degree. Speed of vessels, whether propelled by steam or sails, is only ascertained by "log and line," each "knot" in the line representing one mile on the sea. The navigator can also ascertain distances run from day to day by taking altitudes of the sun, and finds his position on the chart by computations based on the sea mile as his measure. Different rules from those on the land — different knowledge — different laws and even different courts — control the business and controversies pertaining to the seas.

It is said that the navigator may reduce his sea mile to a land mile, and be in accord with that mile in that way. It is not often done, and cannot by ordinary men be easily done. A practice of making the reductions would impose burdens and mistakes upon business. The seamen would contend that the. land mile should be extended to the length of the sea mile, to ensure uniformity. The statute mile is adopted only in England and the United States, while the marine mile is known to and acted upon by all the civilized peoples of the globe.

The contract is, to run fifteen miles per hour. Whether the boat had that speed was to be ascertained by "a trial at sea." Was it not to ascertain if she would make that distance in the

time on the sea? Was not the distance to be measured in the manner that distances are measured on the sea? Was it not sea miles that were to be run upon the sea? It seems reasonable to think so. The contract fails only in the slightest degree of so expressing it,— while the implication declares it to be so nearly as strong as words would express it. It may be, that difficulties attend this view; but will not greater difficulties attend any other view? The uncertainties of usage would only still more embarrass the solution of the contract,— it can be better interpreted by the law.

Would not the same question have arisen in the courts before had the law not been already considered to be as we declare it? We are much impressed with the fact that the words " miles " and " knots " are constantly used in marine cases as convertible and equivalent terms. There are many cases where the words are used in the same acceptation in legal opinions.

It is noticeable in admiralty cases that the word " knot " is more commonly employed to denote the rate of speed, and the word " mile " more commonly used to express distances accomplished by speed — the result of speed. As examples :: One head note in an English case reads, stripping it of redundant words, thus : " A steamer, going at the rate of seven knots an hour, ran into a bark, about two hundred miles from Sandy Hook, the bark going at the rate of about a mile an hour;" and the steamer was in the wrong. Another is this : " A steamer, when off the Casketts, and ten miles therefrom, was running at a speed of eight or nine knots an hour;" an unlawful rate of speed in that case. Another sample : " Four or five knots an hour is not a moderate speed for a steamer in a thick fog, twenty-five miles east of Gothland." In these and a vast number of cases, the words miles and knots mean the same thing — mean marine miles. In many cases, the word knots is first used and then repeated as miles — the words being spoken as interchangeable expressions.

In the case of *The Queen* v. *Keyn*, the Franconia case, L. R. 2 Ex. Div. 63, in which a question of international law of extraordinary importance was discussed by many judges, a case

involving a crime committed below low water mark, but within three miles from the English shore, the phrases "three miles," "marine league," "three geographical miles" and "three sea miles," are over and over again used to express precisely the same thing. In treaties between nations more caution is observed in using exact language, and writers on international law are circumspect in that respect. The English statutes commonly use the words "marine league" to indicate the three-mile belt from shore, but not always so, as may be seen in an act of Victoria copied in the above case on page 84. The United States statutes use the words "marine league" in expressing the distance from shore in which admiralty jurisdiction shall be limited, but use the term miles in other cases. There is, or was, a statutory law of Massachusetts (*Dunham* v. *Lamphere,* 3 Gray, 268) preventing fishing within one mile of Nantucket shores. Could that be a land mile, when located on the sea? Miles on the land consist of "paces"— those on the sea must be differently measured.

It seems evident enough that the word mile means marine mile or "admiralty knot," in the business of the Navy department in this country. In the latest circular of that department, advertising for the construction of war vessels, the conditions require that the vessels "must be able to maintain a rate of speed of seventeen knots an hour *on the measured mile.*" In General Order Number 314 of that department, published in 1883, the measured mile is thus specified: "For these (trials of speed) a convenient locality should be chosen, where a *nautical mile* can be laid off and marked at each end by two stakes placed in a line at right angles to it." An examination of other public papers of that department shows pretty clearly that the words, knots and miles, are there considered as the same thing.

We find cases in the common law courts where it is not unlikely that the distances on the sea spoken of, were measured as land miles or parts of land miles, instances of measurements upon or near the shore, or measurements in rods and feet, cases resting upon peculiar facts. Illustrations of these are found in the following citations: *Mahler* v. *Transportation Co.* 35 N. Y.

352, 360; *People* v. *Supervisors*, 73 N. Y. 393; *United States* v. *Jackalow*, 1 Black. 484; *Dolner* v. *Monticello*, Holmes, 7.

When we speak of measures and weights, we mean wine measure for one article and beer measure for another, and different standards of weight for different solid substances. When we speak of measuring our roads we imply the common mile, and when of tracks across the sea, we mean that standard of distance by which such tracks are not only usually but always measured. When we say a boat shall be sailed fifteen miles at sea, or on the sea, we mean that distance in sea miles. The sea mile is as important in its sphere as the land mile is in the sphere where it operates. It may be that the defendant did not understand that he was bound by sea-mile measure; but it must be pronounced by the law that he should have so understood it. There is no need of discussing the question upon the theory that the trial trip was to be on some river, inasmuch as the vessel route from Rockland to Bar Harbor is a coastwise sea passage, and the test of speed was to be exhibited on the sea.

This decides the vital point of the case. We think the minor rulings are unexceptionable. The jury evidently held the defendant to the test of marine miles. Upon that basis, we do not feel like taking upon ourselves the responsibility of declaring the verdict wrong.

It may be appropriate to add that, while the case was set down for argument in 1880, the papers reached the court in the latter part of the year 1885.

*Motion and exceptions overruled.*

WALTON, DANFORTH, VIRGIN, LIBBEY and FOSTER, JJ., concurred.